UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAMON CORTESLUNA,<br><br>Plaintiff,<br><br>v.<br><br>MANUEL LEON, et al.,<br><br>Defendants. | Case No. 17-cv-05133-JSC<br><br>**ORDER RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 113 |

Plaintiff Ramon Cortesluna brings this civil rights action against the City of Union City and Union City Police Officers Leon, Rivas-Villegas, and Kensic alleging violation of state and federal law in connection with an incident at his home on November 6, 2016. Following remand from the Ninth Circuit Court of Appeals, Defendants' motion for partial summary judgment is now pending before the Court. (Dkt. No. 113.) After considering the parties' briefs, the relevant legal authority, and having had the benefit of oral argument on October 12, 2022, the Court GRANTS IN PART and DENIES IN PART the motion for summary judgment. The motion is denied as to Plaintiff's Bane Act claim against Rivas-Villegas, his *Monell* claim based on ratification, and his punitive damages claim, but is granted in all other respects.

**DISCUSSION**

Defendants move for summary judgment on: (1) Plaintiffs' state law claims against Leon and Kensic; (2) Plaintiff's state law claims against Rivas-Villegas for violation of the Ralph Act, Cal. Civ. Code § 51.7; the Bane Act, Cal. Civ. Code § 52.1; and Intentional Infliction of Emotional Distress (IIED); (3) Plaintiff's *Monell* claim; (4) Plaintiff's negligent hiring, training,

and supervision claim; and (5) Plaintiff's claim for punitive damages.[1]

**A. State Law Claims Against Kensic and Leon**

Defendants move to for summary judgment on Plaintiff's state law claims against Kensic and Leon under the law of the case doctrine or as a matter of law. The first basis is dispositive.

**1. Law of the Case Doctrine**

"The law of the case doctrine generally prohibits a court from considering an issue that has already been decided by that same court or a higher court in the same case." *Stacy v. Colvin*, 825 F.3d 563, 567 (9th Cir. 2016). "The issue in question must have been decided explicitly or by necessary implication in the previous disposition." *Hall v. City of Los Angeles*, 697 F.3d 1059, 1067 (9th Cir. 2012) (internal citation omitted). It is a discretionary doctrine, but the prior decision should be followed unless

> (1) the decision is clearly erroneous and its enforcement would work a manifest injustice, (2) intervening controlling authority makes reconsideration appropriate, or (3) substantially different evidence was adduced at a subsequent trial.

*In re Rainbow Mag., Inc.*, 77 F.3d 278, 281 (9th Cir. 1996) (internal citation omitted).

Defendants insist that the doctrine applies here because (1) the Ninth Circuit found that the Leon's use of force was lawful and Kensic was not liable to failure to intervene under the circumstances; (2) the unlawful use of force is a prerequisite to all of Plaintiff's state law claims against Leon and Kensic; and (3) no exception exists. Plaintiff does not dispute that the law of the case doctrine bars the remaining claims against Kensic.[2] Plaintiff also does not dispute that the doctrine—if applied—bars the remaining claims against Leon. But as for Leon, Plaintiff contends that "new evidence on remand shows that Leon admitted to seeing the knife prior to shooting,

---

[1] The parties have raised a number of evidentiary objections; however, because the disputed evidence is not material to the Court's decision, it is unnecessary to resolve these objections.

[2] The Ninth Circuit affirmed this Court's judgment as to Kensic holding that there was "no evidence that Kensic knew what the other defendants would do, and the events unfolded very rapidly—in a matter of seconds. Kensic therefore lacked any realistic opportunity to intercede." *See Cortesluna v. Leon*, 979 F.3d 645, 656 (9th Cir. 2020) (citing *Cunningham v. Gates*, 229 F.3d 1271, 1289–90 (9th Cir. 2000) (holding that officers can be held liable for failing to intervene only if they had a realistic opportunity to do so).

thereby removing any mystery or guesswork about the location of the knife and creating a triable issue of fact about the credibility of the claim that Leon believed Cortesluna was reaching for the knife." (Dkt. No. 122 at 17.) This evidence, however, is not new. Nor does it change the analysis.

First, the evidence upon which Plaintiff relies is not new—it is Officer Leon's deposition testimony from 2018. (Dkt. No. 126-7, Leon Depo. at 52-53.) Plaintiff's argument that this evidence supports different inferences on remand does not fall within the "new evidence" exception to the law of the case doctrine. *See Askins v. U.S. Dep't of Homeland Sec.*, 899 F.3d 1035, 1043 (9th Cir. 2018) ("the law of the case doctrine allows the court to impose a heightened burden on the plaintiff—to show clear error, changed law, *new* evidence, changed circumstances, or manifest injustice.") (emphasis added). Plaintiff cannot avoid the Ninth Circuit's decision by merely emphasizing different evidence than he did the first time around.

Second, the evidence Plaintiff is now emphasizing does not change the outcome. Whether Leon saw the knife before he shot Plaintiff is immaterial to the reasonableness of his force. The Ninth Circuit held:

> Here, first, the alleged crime was severe: a twelve-year-old girl told a 911 dispatcher that Plaintiff had threatened his girlfriend and her daughters with a chainsaw. The threat was just as great even if Plaintiff had been using the saw manually.
>
> Leon faced an immediate threat, the second and most important factor. *C.V. ex rel. Villegas*, 823 F.3d at 1255. Although Plaintiff did not have a chainsaw when the officers arrived, Plaintiff emerged from the house holding a large metal object. Plaintiff dropped the object when ordered to do so, but he still had a knife in the left pocket of his pants. Leon, who was standing diagonally to Plaintiff's right, could not see the knife from his position. Kensic announced that Plaintiff had a knife and ordered Plaintiff to put his hands up. Plaintiff instead lowered his hands toward his thighs—and thus toward the knife— after which Leon fired the beanbag shotgun.
>
> The third factor pertains to Plaintiff's resistance. Before the first shot was fired, Plaintiff put his hands down, and closer to the knife in his pocket, after police repeatedly told him to put his hands up. Plaintiff's hands remained near the knife in his pocket at the time of the second shot.
>
> In summary, even viewing the facts in Plaintiff's favor, the force that Leon applied was objectively reasonable in the circumstances, considering both the level of intrusion and the strength of the

government's interest.

*Cortesluna*, 979 F.3d at 653. The pre-existing evidence that Plaintiff now highlights—that Leon saw the knife before he fired the first shot and did not just rely on Kensic's announcement of a knife—provides further support for the reasonableness of his use of force. *See Smith v. City of Hemet*, 394 F.3d 689, 704 (9th Cir. 2005) ("where a suspect threatens an officer with a weapon such as a gun or a knife, the officer is justified in using deadly force."); *Deorle v. Rutherford*, 272 F.3d 1272, 1281 (9th Cir. 2001) ("an officer's use of force must be objectively reasonable based on his contemporaneous knowledge of the facts."). Plaintiff does not and cannot argue that Leon saw the knife was facing up in Plaintiff's pocket. (Dkt. No. 126-7, Leon Depo. at 53:17-18 ("Q Did you see the knife was point up? A: I don't remember that.").). And even if a reasonable trier of fact could find that he did see it pointing up, that does not create a genuine dispute as to the reasonableness of his use of force. Plaintiff's emphasis on the Ninth Circuit observing that Rivas-Villegas was able to see that the knife was protruding up is unpersuasive. With respect to Rivas-Villegas's use of force the Ninth Circuit held that Plaintiff no longer posed a risk as he was "lying face down on the ground, experiencing visible pain from having been shot by the two beanbag rounds, and not resisting." *Cortesluna*, 979 F.3d at 653.[3]

Accordingly, Plaintiff's state law claims against Kensic and Leon are barred by the law of the case doctrine. They are entitled to judgment in their favor on these claims.

### B. State Law Claims Against Rivas-Villegas

#### 1. The Ralph Act, Section 51.7

The Ralph Act guarantees people in California "the right to be free from any violence, or intimidation by threat of violence, committed against their persons or property because of political affiliation, or on account of any [listed] characteristic." Cal. Civ. Code § 51.7(a). To prevail on a

---

[3] Further, as Judge Collins noted in his partial dissent, "The majority erroneously discounts the threat presented by the knife, asserting that, because it was 'protruding blade-up' in Cortesluna's pocket, 'it would not have been possible for Plaintiff to grab it and attack anyone.' *See* Maj. Opin. at [653]. The majority overlooks the fact that, as the videotape makes clear, the knife was loosely sitting in the large pocket of Cortesluna's baggy pajama bottoms—meaning that Cortesluna could have fit his hand into the pocket to reach the handle." *Cortesluna*, 979 F.3d at 661 (9th Cir. 2020) (Collins, concurring in part, dissenting in part).

Ralph Act claim, Plaintiff must establish that Rivas-Villegas (1) committed or threatened a violent act against him; (2) was motivated by his perception of his political affiliation or other protected characteristic; (3) that he was harmed; and (4) that defendants' conduct was a substantial factor in causing him harm. *See Campbell v. Feld Entertainment, Inc*., 75 F. Supp. 3d 1193, 1205 (N.D. Cal. 2014) (citing *Austin B. v. Escondido Union Sch. Dist*., 149 Cal. App. 4th 860, 880–81 (2007)).

Defendants move for summary on Plaintiff's Ralph Act claim insisting that Plaintiff cannot show racial animus. In opposition, Plaintiff appears to argue a Ralph Act claim based on his race and gender contending that Rivas-Villegas failed to "communicate in Spanish although able" and failed to "countenance obvious contradictory evidence…and whether there truly was a domestic violence emergency." (Dkt. No. 122 at 26.) Neither argument is availing. Plaintiff has identified no evidence suggesting that Rivas-Villegas' act of placing his knee on Plaintiff's back to handcuff him was based on racial animus or animus towards his gender. *See Foster v. Berkeley Police Dep't*, No. C 10-3703 SI, 2011 WL 5861266, at *8 (N.D. Cal. Nov. 22, 2011) ("Plaintiff has only offered her subjective belief that the officers' use of force was racially motivated, and such subjective beliefs are insufficient to defeat summary judgment" and collecting cases regarding the same); *Austin B*., 149 Cal. App. 4th at 881 (upholding dismissal of Ralph Act claim where there was "was no evidence that [the defendant] took the alleged actions because he was biased against or had an animus against disabled children.").

Accordingly, the Court grants Defendants' motion for summary judgment on the Ralph Act claim.

**2. The Bane Act, Section 52.1**

The Bane Act prohibits interference or attempted interference with a person's rights under the U.S. or California Constitutions and laws by "threats, intimidation, or coercion." Cal. Civ. Code § 52.1(a)–(b). To state a Bane Act claim, a plaintiff does not need to establish a threat, intimidation, or coercion that is "transactionally independent" from the constitutional violation. *Reese v. Cnty. of Sacramento*, 888 F.3d 1030, 1043 (9th Cir. 2018) (citing *Cornell v. City & Cnty. of San Francisco*, 17 Cal. App. 5th 766, 799–802 (2017)). However, "the Bane Act requires a 'a

1   specific intent to violate the arrestee's right to freedom from unreasonable seizure.'" *Reese*, 888

2   F.3d 1043 at (quoting *Cornell*, 17 Cal. App. 5th at 384).

3       Defendants insist that Rivas-Villegas lacked the "specific intent" necessary for a Bane Act

4   claim. However, evidence of recklessness can be sufficient to demonstrate specific intent. *S.R.*

5   *Nehad v. Browder*, 929 F.3d 1125, 1142 n.15 (9th Cir. 2019). Because Defendants concede that

6   there are triable issues of fact with respect to the reasonableness of Rivas-Villegas' use of force,

7   these same issues of fact could give rise to a finding of recklessness. Accordingly, Defendants'

8   motion for summary judgment on the Bane Act claim is denied.

9       **3. IIED Claim**

10      To succeed on his IIED claim, Plaintiff must show that Rivas-Villegas intentionally or

11  recklessly caused him to suffer "severe or extreme emotional distress" through his "extreme and

12  outrageous conduct." *Hughes v. Pair*, 46 Cal. 4th 1035, 1050 (2009). "A defendant's conduct is

13  outrageous when it is so extreme as to exceed all bounds of that usually tolerated in a civilized

14  community." *Id*. at 1050-51 (internal quotation marks omitted).

15      Defendants move for summary judgment arguing that Rivas-Villegas' conduct—holding

16  Plaintiff in place for no more than eight seconds while he was handcuffed and while he was

17  disarmed—is neither extreme or outrageous. The Court agrees. As the Supreme Court noted,

18  "video evidence shows, and Cortesluna does not dispute, that Rivas-Villegas placed his knee on

19  Cortesluna for no more than eight seconds and only on the side of his back near the knife that

20  officers were in the process of retrieving." *Rivas-Villegas v. Cortesluna*, 211 L. Ed. 2d 164 (Oct.

21  18, 2021). Given that officers were responding to a domestic violence incident possibly involving

22  a chainsaw and the suspect had a knife protruding from his pocket, Rivas-Villegas' action of

23  restraining Plaintiff with a knee on the back for no more than eight seconds, does not as a matter

24  of law "exceed all bounds of that usually tolerated in a civilized community." *Hughes*, 46 Cal. 4th

25  at 1050.

26      Accordingly, Defendants' motion for summary judgment on Plaintiff's IIED claim is

27  granted.

28      //

### C. *Monell* Claim

A *Monell* claim can proceed under three theories of municipal liability: "(1) when official policies or established customs inflict a constitutional injury; (2) when omissions or failures to act amount to a local government policy of deliberate indifference to constitutional rights; or (3) when a local government official with final policy-making authority ratifies a subordinate's unconstitutional conduct." *Brown v. Contra Costa Cty.*, No. C 12-1923 PJH, 2014 WL 1347680, at *8 (N.D. Cal. Apr. 3, 2014) (citing *Clouthier v. Cty. of Contra Costa*, 591 F.3d 1232, 1249-50 (9th Cir. 2010)). Whichever theory is alleged, the plaintiff must demonstrate that "the policy is the moving force behind the constitutional violation." *Dougherty v. City of Covina*, 654 F.3d 892, 900-01 (9th Cir. 2011); *see also City of Oklahoma v. Tuttle*, 471 U.S. 808, 823 (1985) ("At the very least there must be an affirmative link between the policy and the particular constitutional violation alleged."). Further, "[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." *Tuttle*, 471 U.S. at 823-24.

Plaintiff advances both a ratification and policy of inadequate training/deliberate indifference theory of *Monell* liability. With respect to ratification, Defendants insist that summary judgment is proper because Plaintiff has not proffered evidence sufficient to support a finding that the final policy-maker—the Chief of Police—"made a conscious, affirmative choice to approve" of Rivas-Villegas's use of force. (Dkt. No. 127 at 20 (quoting *Clouthier*, 591 F.3d at 1250).) The Chief, however, expressly approved Kensic's post-incident commendation of Leon and Rivas-Villegas stating "Fantastic coordination and excellent decision making in this incident. Incredible work." (Dkt. No. 126-3 at 24.) Further, the commendation itself stated that Officer Rivas did "great work," and that the suspect was "subdued with the minimal force that [the suspect's] actions would allow." (Dkt. No. 126-3 at 25.) Drawing all inferences in Plaintiff's favor, a reasonable trier of fact could conclude that the Chief was thereby approving of Rivas-Villegas's use of force. *See Christie v. Iopa*, 176 F.3d 1231, 1239 (9th Cir. 1999) (holding that a plaintiff states a claim under *Monell* if the plaintiff alleges that the "authorized policymakers

7

approve a subordinate's decision and the basis for it.").

There is no evidence, however, to support Plaintiff's policy of inadequate training/deliberate indifference theory. To establish liability for failure to train, Plaintiffs must show that a particular training deficiency was so egregious that it "amount[ed] to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). Plaintiff maintains that "[t]he failure to train, reprimand, discipline, or even investigate Defendants Rivas and Leon following this incident represents a concerted effort to turn a blind eye to uses of excessive force and indicates a deliberate indifference to Mr. Cortesluna's rights which supports a finding of *Monell* liability." (Dkt. No. 122 at 30.) *Monell* liability, however, requires a *pattern* of similar constitutional violations or demonstration that training was obviously necessary to avoid constitutional violations. *See Connick v. Thompson*, 563 U.S. 51, 62 (2011) ("A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train."). Plaintiff's arguments regarding lack of training and discipline are unavailing.

First, Leon's use of less-than lethal force cannot be a basis for *Monell* liability given the Ninth Circuit's holding that he did not use excessive force as discussed above.

Second, Leon and Rivas-Villegas's act of handcuffing and moving Plaintiff by the handcuffs is not at-issue. In its initial summary judgment ruling, this Court granted summary judgment on Plaintiff's Fourth Amendment excessive force claim based on his handcuffing. *See Cortesluna v. Leon*, No. 17-CV-05133-JSC, 2018 WL 6727824, at *11 (N.D. Cal. Dec. 21, 2018). On appeal, although Plaintiff challenged this finding, the Ninth Circuit only reversed on the question of whether Rivas-Villegas used excessive force when he placed his knee on Plaintiff's back. *Cortesluna v. Leon*, No. 19-15105, Dkt. No. 12 (9th Cir. Apr 9, 2019); *Cortesluna*, 979 F.3d at 653; *Id*. 663 n. 4 ("The majority properly does not rely on Cortesluna's further claim that Rivas-Villegas should not have lifted him from the ground by grabbing his handcuffs.") (Collins, concurring in part, dissenting in part). Under the law of the case doctrine, Plaintiff is barred from arguing that Rivas-Villegas used excessive force with respect to the handcuffing. *See Hall v. City of Los Angeles*, 697 F.3d 1059, 1067 (9th Cir. 2012).

1　　　　Finally, Plaintiff's argument that Rivas-Villegas "has a prior complaint with respect to
2　roughing up a suspect while 'assisting' him to the ground while the suspect was handcuffed,
3　indicating a pattern of conduct and need for training" is not supported by the evidence.  (Dkt. No.
4　122 at 30 (emphasis in original).)  The internal affairs investigation on which Plaintiff relies was
5　for other conduct and was not sustained.  (Dkt. No. 125-6 at 36.)  Even if this were not so,
6　"evidence of the failure to train a single officer is insufficient to establish a municipality's
7　deliberate policy." *Blankenhorn v. City of Orange*, 485 F.3d 463, 484 (9th Cir. 2007).  '[A]bsent
8　evidence of a program-wide inadequacy in training,' any short-fall in a single officer's training
9　'can only be classified as negligence on the part of the municipal defendant-a much lower standard
10　of fault than deliberate indifference.'" *Id.* (quoting *Alexander v. City and County of San Francisco*,
11　29 F.3d 1355, 1367 (9th Cir. 1994)); *see also Hunter v. Cnty. of Sacramento*, 652 F.3d 1225,
12　1234, n.8 (9th Cir. 2011) ("failure to investigate and discipline employees in the face of
13　*widespread* constitutional violations—can support an inference that an unconstitutional custom or
14　practice has been unofficially adopted by a municipality.") (emphasis added).  Plaintiff has not
15　met his burden of demonstrating a triable issue of fact with respect to *Monell* liability based on a
16　failure to train or discipline Rivas-Villegas.

17　　　　Accordingly, Defendants' motion for summary judgment on Plaintiff's *Monell* claim is
18　denied as to Plaintiff's ratification theory, but granted as to Plaintiff's theory based on a policy of
19　failure to train/deliberate indifference.

### D.  Negligent Hiring, Training, and Supervision Claim

21　　　　Defendants moved for summary judgment on Plaintiff's seventh claim for relief for
22　negligent hiring, training, and supervision.  (Dkt. No. 113 at 33.)  Plaintiff did not oppose
23　Defendants' motion for summary judgment on this claim and as such it is deemed abandoned and
24　Union City is entitled to judgment in its favor on this claim.  *See Shakur v. Schriro*, 514 F.3d 878,
25　892 (9th Cir. 2008) ("a plaintiff has abandoned ... claims by not raising them in opposition to the
26　defendant's motion for summary judgment.") (cleaned up).

### E.  Punitive Damages

28　　　　Defendants move for summary judgment on Plaintiff's punitive damages claim against

Leon, Kensic, and Rivas-Villegas. Because Plaintiff does not have a viable claim against either Kensic or Leon, punitive damages are not available as to them. However, because Defendants concede that a genuine dispute of fact exists as to the reasonableness of Rivas-Villegas's use of force, punitive damages are available against him. *See Dang v. Cross*, 422 F.3d 800, 807 (9th Cir. 2005) ("It is well-established that a jury may award punitive damages under section 1983 ...when a defendant's conduct was driven by evil motive or intent, or when it involved a reckless or callous indifference to the constitutional rights of others.").

## CONCLUSION

For the reasons stated above, the Court GRANTS IN PART and DENIES IN PART Defendants' motion for summary judgment. The motion is denied as to Plaintiff's Bane Act claim against Rivas-Villegas, his *Monell* claim based on ratification as to Rivas-Villegas, and his punitive damages claim against Rivas-Villegas. It is granted in all other respects.

Plaintiff's administrative motion to file under seal certain documents or portions thereof that Defendants designated as confidential which were submitted in connection with Plaintiff's opposition is granted to the extent set forth in Defendants' declaration in support of sealing. (Dkt. No. 129.)

A jury trial in this matter is set for December 12, 2022 with the Pretrial Conference on November 17, 2022. The Court's June 16, 2022 Order sets forth the schedule for the parties' pretrial filings. (Dkt. No. 111.)

This Order disposes of Docket Nos. 113, 125.

**IT IS SO ORDERED.**

Dated: October 12, 2022

JACQUELINE SCOTT CORLEY
United States District Judge